IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

RICHARD DANIELS,

        Plaintiff,

v.                                  CIVIL ACTION NO. 3:19-0413

WAYNE COUNTY;
CITY OF KENOVA;
TOWN OF CEREDO;
WADE WELLMAN, and
NATHAN TRIPLETT, individually
and in their official capacities as officers
with the Wayne County Sheriff's Department,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Presently pending before the Court are two motions: first, an Amended Partial Motion to Dismiss filed by Defendants Wayne County, Wade Wellman, and Nathan Triplett ("Wayne County Defendants"), *Wayne Cnty. Mot. to Dismiss*, ECF No. 40, and second, a Motion to Dismiss filed by Defendant City of Kenova ("Kenova"), *Kenova Mot. to Dismiss*, ECF No. 45. The issues have since been fully and capably briefed, and both motions are ripe for review. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the motions.

### I. BACKGROUND

In the fall of 2018, Plaintiff Richard Daniels was released from on parole from a term of incarceration in the Western Regional Jail in Barboursville, West Virginia.[1] *Am. Compl.*, ECF No.

---

[1] Defendant had pleaded guilty to criminal charges in 2016 in the Circuit Court of Cabell County, West Virginia. *Am. Compl.*, ECF No. 30, at ¶ 10.

30, at ¶¶ 10–11. Plaintiff moved into the home of a family member in Kenova, West Virginia upon his release, and "adhered to the requirements of his parole" and "has no history of recidivism." *Id.* at ¶¶ 12–13. Despite compliance with the conditions of his parole, Plaintiff began noticing a heavy police presence in his neighborhood—"a quiet and relatively secluded area not known for criminal activity." *Id.* at ¶ 19. More to the point, Plaintiff recalls being stopped, detained, and searched by various police officers[2] seven separate times within the span of one and a half to two months. *Id.* at ¶ 16. He also alleges that a family member was pulled over after borrowing his vehicle. *Id.* at ¶ 17.

While this pattern of increased attention from police officers is not described in great detail, Plaintiff recalls one event with specificity. On April 8, 2019, Plaintiff arrived at a local convenience store and waited in his vehicle while completing a phone call. *Id.* at ¶¶ 20–21. As he talked, Officers Wade Wellman and Nathan Triplett—both members of the Wayne County Sheriff's Department Drug Enforcement Unit—exited their vehicle in the same parking lot and approached Plaintiff "with their hands on their firearms."[3] *Id.* at ¶¶ 22, 26. The officers ordered Plaintiff out of his vehicle, and he complied. *Id.* at ¶¶ 24–25. They seized his cell phone and then proceeded to perform a pat-down search of Plaintiff's person and placed him in handcuffs. *Id.* at ¶¶ 26–27.

The officers elected to extend the stop by calling a K-9 unit to conduct a sniff around Plaintiff's vehicle. *Id.* at ¶ 28. Presumably after the K-9 unit's arrival, the officers spent approximately an hour and a half searching the car. *Id.* at ¶ 30. The search damaged Plaintiff's

---

[2] Plaintiff alleges that these officers are all members "of the Wayne County Sheriff's Department, Ceredo Police Department and/or Kenvoa Police Department." *Id.* at ¶ 16.

[3] Plaintiff claims that his vehicle had been stopped for several minutes and that he was engaged in no suspicious activity. *Id.* at ¶ 23.

vehicle, with several wires in the dashboard disconnected and with the lining of his trunk removed. *Id.* at ¶ 32. At some point during the search, a man wearing plainclothes and identified only as "Bobby" arrived and was invited to participate in the search. *Id.* at ¶¶ 33–36. Despite the length and intrusiveness of the officers' inspection, "they did not locate any illegal substances, paraphernalia, weapons or other illegal or otherwise prohibited items." *Id.* at ¶ 37. Following the search, the officers escorted Plaintiff—who had been standing and handcuffed the entire time—into the convenience store's bathroom and subjected him to a strip search. *Id.* at ¶ 38. Once again, they discovered "no illegal substances or other illegal items on Plaintiff's person." *Id.* at ¶ 39.

Plaintiff initiated this civil rights action soon after, filing a Complaint on May 29, 2019. *Compl.*, ECF No. 1. After learning the identities of Wellman and Triplett, Plaintiff moved to amend the Complaint on August 2, 2019 to substitute their names for "Two Unknown Wayne County Sheriff's Department Officers." *Mot. for Leave*, ECF No. 16, at 1. The Court granted that motion, mooting a pending motion to dismiss and replacing the original Complaint with the presently-operative Amended Complaint. *Order*, ECF No. 29, at 1–2. Soon after, Plaintiff filed a Notice of Voluntary Dismissal of Count Three of the Amended Complaint. *Notice*, ECF No. 34, at 1. Wayne County, Wellman, and Triplett followed with their Amended Partial Motion to Dismiss on November 5, 2019, *Wayne Cnty. Mot. to Dismiss*, at 1, which the City of Kenova followed with its own Motion to Dismiss on December 19, 2019, *Kenova Mot. to Dismiss*, at 1. Plaintiff filed Responses to both Motions, *Resp. in Opp'n to Wayne Cnty. Mot. to Dismiss*, ECF No. 43; *Resp. in Opp'n to Kenova Mot. to Dismiss*, ECF No. 47, and the respective defendants filed replies, *Wayne Cnty. Reply*, ECF No. 44; *Kenova Reply*, ECF No. 48. Together, the motions implicate

every remaining count except Count One.[4] Before considering the parties' arguments for and against dismissal, the Court will briefly summarize the legal standards that will guide its analysis.

## II. LEGAL STANDARDS

Rule 8(a) of the Federal Rules of Civil Procedure provides that a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) permits a party to challenge a complaint for failing to meet this threshold, and authorizes courts to dismiss those portions of a complaint that fail "to state a claim upon which relief can be granted." In order to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Attempting to draw a precise line between "plausible" and "implausible" claims for all cases would be an exercise in futility; nevertheless, it is well established that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conversely, mere "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Courts are likewise under no obligation to consider "unwarranted inferences, unreasonable conclusions, or arguments." *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009). Yet the point remains that the purpose of a motion to dismiss is to test the formal sufficiency of a claim for relief—not to resolve the facts or merits of a case. 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (3d ed. 1990). As a result, a court may only grant a motion to dismiss "if, after accepting all well-

---

[4] Though the Wayne County Defendants do not move for dismissal of Counts Five or Ten of the Amended Complaint, their immunity argument still implicates both counts.

pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears *certain* that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (emphasis added).

Given the substantive issues raised in this case, one final point is worth mentioning. As a court's focus at the motion to dismiss stage is directed to allegations rather than evidence, the relevant inquiry "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims" he or she makes. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). As such, a motion to dismiss "generally cannot reach the merits of an affirmative defense." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Id.* Even so, "[t]his principle only applies . . . if all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Id.* (citing *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (internal quotations and punctuation omitted). It is with these legal standards in mind that the Court turns to a consideration of both motions.

### III. DISCUSSION

Plaintiff has divided the Amended Complaint into ten counts. The first two of these are grounded in federal constitutional law, *Am. Compl.*, at ¶¶ 40–79, while Counts Four through Ten are state law torts, *id.* at ¶¶ 81–131. Given issues of sovereign and statutory immunity, the Court will begin its analysis by discussing the various immunity arguments contained in both motions. As no immunity doctrine is entirely dispositive at this stage of litigation, the Court will proceed to a discussion of Plaintiff's remaining claims.

### A. Immunity

The various defendants advance what are essentially two grounds for immunity respecting Plaintiff's claims. First is the *City* of Kenova's argument that the Eleventh Amendment's guarantee of sovereign immunity to *states* warrants its total dismissal from this action. Second, both sets of defendants argue that the West Virginia Governmental Tort Claims and Insurance Reform Act provides a statutory shield against Plaintiff's state law claims. The Court reviews both arguments below.

#### 1. Sovereign Immunity

In considering Kenova's argument that the sovereign immunity bars this suit, the Court goes straight to the source: the Eleventh Amendment, which provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The United States Supreme Court has since consistently and unambiguously interpreted this language to bar suit against state governments by their own citizens. *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). The Court has extended this logic slightly beyond states themselves, holding that the Eleventh Amendment bars suit against "state agents and state instrumentalities." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). Yet this extension is not limitless. Of particular relevance here, "municipalities, unlike states, do not enjoy a constitutionally protected immunity from suit." *Jinks v. Richland Cnty.*, 538 U.S. 456, 466 (2003). And despite Kenova's unavailing arguments to the contrary, this is true even when "such entities exercise a slice of state power." *Lake Country Estates v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 401 (1979). Here, Kenova has already admitted that it is a municipality. *See Am. Compl.*, at ¶ 3; *Kenova Answer*, ECF No. 35, at ¶ 3. It follows

that there is nothing more to say on the question of sovereign immunity, as it has no bearing on this case.

### 2. Statutory Immunity

Both municipal defendants also argue that statutory immunity created by the West Virginia Governmental Tort Claims and Insurance Reform Act ("Tort Claims Act") immunizes them from liability on Plaintiff's state law claims.[5] *See* W. Va. Code § 29-12A-1, *et seq. inter alia*, the Tort Claims Act provides that political subdivisions are liable "for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment." W. Va. Code § 29-12A-4(c)(2). The logical corollary to this rule is that "West Virginia political subdivisions are not liable for the intentional malfeasance of their employees." *Jones v. Bd. of Educ. of Putnam Cnty.*, No. 3:19-0618, 2020 WL 118600, at *7 (S.D.W. Va. Jan. 9, 2020). Pertinent to the pending motions, the City of Kenova and Wayne County are political subdivisions. *Kenova Mem. of Law*, ECF No. 46, at 4; *Wayne Cnty. Mem. of Law*, ECF No. 41, at 17.

Here, Plaintiff raises seven state law claims: abuse of process, false imprisonment, assault, false light invasion of privacy, negligent infliction of emotional distress, harassment, and intentional infliction of emotional distress. Only one of these claims is grounded in negligence— that is, Plaintiff's claim for negligent infliction of emotional distress. Though Plaintiff argues that "the essence of [his] claims is that Defendant[s] . . . negligently exercised their powers in the scope of their employment," *Resp. in Opp'n to Kenova Mot. to Dismiss*, at 5, "a mere allegation of negligence does not turn an intentional tort into negligent conduct," *Weigle v. Pifer*, 139 F. Supp.

---

[5] The parties do not argue that the individual officers are immunized by the Tort Claims Act, and in any event would be unsuccessful in doing so at this stage of litigation. *See* W. Va. Code § 29-12A-5(b).

3d 760, 780 (S.D.W. Va. 2015) (quoting *Benavidez v. United States*, 177 F.3d 927, 931 (10th Cir. 1999)) (internal quotation marks omitted). As they are intentional torts, municipal liability will not lie for Plaintiff's claims of abuse of process, false imprisonment, assault, false light invasion of privacy, harassment, and intentional infliction of emotional distress.

The municipal defendants raise one more argument with respect to the Tort Claims Act worth considering. Under West Virginia Code § 29-12A-5(a)(5), political subdivisions are immune from liability where a loss or claim stems from "a failure to provide, or the method of providing, police, law enforcement or fire protection." The Supreme Court of Appeals of West Virginia has considered the reach of this provision, and held that political subdivisions are entitled to immunity "if a loss or claim results from the failure to provide fire protection or the method of providing fire protection regardless of whether such loss or claim . . . is caused by the negligent performance of acts by the political subdivision's employees while acting within the scope of employment." *Albert v. City of Wheeling*, 792 S.E.2d 628, Syl. Pt. 4 (W. Va. 2016). Courts within this District have considered the implications of this holding and have reasoned, in effect, that *Albert* immunizes political subdivisions from the negligent actions of their employees in providing police protection. *See, e.g.*, *Taylor v. Clay Cnty. Sheriff's Dept.*, No. 2:19-cv-00387, 2020 WL 890247, *6 (S.D.W. Va. Feb. 24, 2020). Applying this logic here, the Wayne County and Kenova are entitled to dismissal of Plaintiff's claim for negligent infliction of emotional distress. The Tort Claims Act thus shields both of these defendants from liability on Plaintiff's state law claims, and dismissal is warranted with respect to Counts Four through Ten.

### B. Remaining Claims

The Court is therefore left to consider whether Plaintiff has stated a claim for relief that is plausible on its face with respect to each remaining count. Before proceeding through this analysis,

however, the Court will briefly address Wayne County's argument that Plaintiff's claims must be dismissed against the individual officers to the extent they are sued in their "official capacities." *See Am. Compl.*, at 1. Simply put, "official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (internal citation and quotation marks omitted). It follows that so "long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. As they are employees of the Wayne County Commission, an official-capacity suit against Wellman and Triplett would essentially represent a second (and redundant) suit against Wayne County. Consistent with this reasoning, official-capacity claims against Wellman and Triplett will be dismissed as duplicative. *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004). It is with this in mind that the Court turns to a consideration of the remaining claims implicated the pending motions.

### 1. *Monell* Claim

As neither motion seeks dismissal of Count One of the Amended Complaint, the Court begins its analysis by focusing on Plaintiff's *Monell* claim[6] contained in Count Two. At core, Plaintiff claims that the municipal defendants have adopted an unconstitutional policy of "stopping, detaining and/or searching individuals, particularly those on parole or probation, without probable cause or reasonable suspicion in violation of the rights of United States citizens

---

[6] The term "*Monell* claim" derives from the United States Supreme Court's holding in *Monell v. Department of Social Services of New York*, wherein the Court first reasoned that local governments could be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury [for which] the government as an entity is responsible." 436 U.S. 658, 694 (1978).

secured by the Fourth and Fourteenth Amendments." *Am. Compl.*, at ¶ 56. Both municipal defendants argue that Plaintiff's claim is deficient as a matter of law, contending that he has not pleaded sufficient facts to plausibly allege the existence of an unconstitutional practice or custom. *See Wayne Cnty. Mem. of Law*, at 8–9; *Kenova Mem. of Law*, at 6.

As an initial matter, it is well established that a state's political subdivisions are amenable to suit under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1976). Yet the fact that political subdivisions are suitable defendants does not render them vicariously liable for the actions of their employees. *Id.* at 694. Rather, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999).

In considering whether Plaintiff has sufficiently pleaded a *Monell* claim, the Court begins by isolating the civil right at issue. In pertinent part, the Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." It is firmly established that "[t]he Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." *Miller v. Prince George's Cnty.*, 475 F.3d 621, 627 (4th Cir. 2007) (internal citation and quotation marks omitted). Though an officer may briefly stop and detain a person for investigative purposes, he must possess "reasonable suspicion" that criminal activity is afoot before doing so. *Terry v. Ohio*, 392 U.S. 1, 22 (1968). Such stops must be reasonable at their inception and in their duration. *United States v. Sharpe*, 470 U.S. 675, 686 (1985). Nevertheless, in the automobile context a stop may be justified when police have probable cause to believe that

a traffic violation has occurred or where they possess reasonable suspicion of "even the most mundane of traffic infractions." *See Hays v. Town of Gauley Bridge,* No. 2:09-1272, 2011 WL 1229797, at *3 (S.D.W. Va. Mar. 29, 2011).

Here, the Court acknowledges that Plaintiff has not pleaded an overwhelming number of facts to support his allegation of an unconstitutional policy or custom. It is not *per se* unconstitutional for officers to pull over certain vehicles more frequently than others; indeed, an officer need only possess reasonable suspicion that a minor traffic offense has been committed to justify doing so. *See United States v. Hassan El*, 5 F.3d 726, 730 (4th Cir. 1993) (holding that "if an officer has probable cause or a reasonable suspicion to stop a vehicle, there is no intrusion upon the Fourth Amendment"). If all Plaintiff could point to were several traffic stops, dismissal might well be warranted. Yet Plaintiff has done more than simply point to traffic stops; rather, he has described a targeted set of stops *in conjunction with* an unconstitutional search of his vehicle, a strip search of his person, and an hours-long detention. It is of course true that "[a] single act . . . cannot suffice, standing alone, to establish the existence" of an unconstitutional policy. *Revene v. Charles Cnty. Com'rs*, 882 F.2d 870, 875 (4th Cir. 1989). Yet, the Court views neither this single seizure nor the traffic stops in isolation apart from the lengthy seizure. Plaintiff has alleged that the municipal defendants maintain a policy or custom of "stopping, detaining and/or searching individuals, particularly those on parole or probation, without probable cause or reasonable suspicion in violation of the rights of United States citizens secured by the Fourth and Fourteenth Amendments." *Am. Compl.*, at ¶ 56. While Plaintiff's factual allegations used to support this claim are far from dispositive, they are sufficiently particularized to state a claim for relief that is plausible on its face.

There is one last snag to address before moving on. While Plaintiff identifies Wellman and Triplett as the officers who conducted the search and seizure on April 8, 2019, he does not identify any other officers at the scene. Wellman and Triplett are employees of the Wayne County Commission, not the City of Kenova. In Kenova's view, then, dismissal is warranted because Plaintiff has not sufficiently alleged that officers within its control demonstrated a pattern of unreasonable searches or seizures. *See Kenova Mem. of Law*, at 6. The Court is not unsympathetic to this argument, and notes that Kenova claims that its officers stopped Plaintiff only once. *Kenova Reply*, at 9. This may well be the case, and discovery will no doubt shed light on the specific interactions of each municipal defendant with Plaintiff. Yet to dismiss Kenova from this action at this point would undercut the core of Plaintiff's *Monell* claim, which is that officers employed by all three municipal defendants executed an unconstitutional policy or custom in concert with each other. The Court therefore believes that dismissal is premature, and the motions are accordingly denied with respect to Count Two.

### 2. Abuse of Process

Turning to Plaintiff's state law claims, the Court begins by considering whether Plaintiff has stated a claim for abuse of process against Defendants Wellman and Triplett.[7] *Am. Compl.*, at ¶¶ 81–88. In West Virginia, "a[n] abuse of process claim consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process." *Ballock v. Costlow*, No. 1:17CV52, 2019 WL 7171365, at *5 (N.D.W. Va. Dec. 23, 2019). This definition alone is enough to dispense with Plaintiff's claim, as "no charges were

---

[7] As noted *supra* in the Court's discussion of the Tort Claims Act, each of Plaintiff's state court claims survives only against Defendants Wellman and Triplett. As they do not seek dismissal of Counts Five or Ten—false imprisonment and intentional infliction of emotional distress, respectively—the Court omits discussion of those claims.

ever filed" and "no process or proceedings, either civil or criminal, were initiated as a result." *Lowe v. Spears*, No. 3:06-0647, 2007 WL 9718279, at *7 (S.D.W. Va. May 4, 2007) (citing *Keim v. Cnty. of Bucks*, 275 F. Supp. 2d 628, 635 (E.D. Pa. 2003)) (reasoning that because no charges or proceedings resulted from a seizure, Plaintiff could not state a claim for abuse of process under West Virginia law). There can be no abuse of process absent the existence of process, and so Plaintiff's claim must be dismissed.

### 3. Assault

The next challenged state law claim is one for assault. *Am. Compl.*, at ¶¶ 96–103. Under West Virginia law, a party is subject to liability for assault where "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." *W. Va. Fire & Cas. Co. v. Stanley*, 602 S.E.2d 483, 495 (W. Va. 2004) (quoting Restatement (Second) of Torts § 21 (1965)). Wellman and Triplett argue that they cannot be liable for assault because "[a]n activity that would otherwise subject a person to liability in tort for assault . . . does not constitute tortious conduct if the actor is privileged to engage in such conduct." *Hutchinson v. W. Va. State Police*, 731 F. Supp. 2d 521, 547 (S.D.W. Va. 2010). As police officers, they argue they are privileged to carry weapons and that any fear stemming from their possession of those weapons could not constitute a claim for assault. *Wayne Cnty. Mem. of Law*, at 12. But as Plaintiff points out, his fear was not limited only to the officers' weapons, and extended to his subsequent strip search. In any event, law enforcement privileges are not absolute, *see Hutchison*, 731 F. Supp. 2d at 548, and a motion to dismiss is a premature procedural tool to resolve disputed questions of privileges and defenses, *see Goodman*, 494 F.3d at 464. The Court finds that Plaintiff has at least stated a claim for assault in alleging that the officers acted intentionally to cause imminent

apprehension of an offensive contact and that he was placed in immediate apprehension of such a contact. Plaintiff's assault claim will proceed against Wellman and Triplett.

### 4. False Light Invasion of Privacy

Plaintiff's next challenged claim is one for false light invasion of privacy. *See Am. Compl.*, at ¶¶ 104–110. In West Virginia, the tort of invasion of privacy includes "includes (1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public." *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 74, Syl. Pt. 8 (W. Va. 1983). Plaintiff's claims fall into the fourth category of invasion of privacy claims, as he alleges that Wellman and Triplett unreasonably placed him in a false light by leaving him handcuffed and in public for several hours while they searched his vehicle. *Am. Compl.*, at ¶ 105. The officers advance several arguments for dismissal, primarily that "matters of legitimate public interest" cannot give rise to a claim for false light invasion of privacy. *Wayne Cnty. Mem. of Law*, at 13. Yet as the officers themselves note, whether a subject is a matter of legitimate public interest is a defense to an invasion of privacy claim. *See Crump*, S.E.2d at 83. It is rarely appropriate to reach questions of an affirmative defense at the motion to dismiss stage, and a court may only do so "if all facts necessary to the affirmative defense 'clearly appear [] *on the face of the complaint*." *Goodman*, 494 F.3d at 464 (quoting *Richmond, Fredericksburg, & Potomac R.R.*, 4 F.3d at 250) (emphasis and brackets in original). The necessary facts to determine whether Plaintiff's detention was a matter of public concern do not appear on the face of the Amended Complaint, and so resolution of the officers' argument at this stage of litigation would be premature.

Of course, the court is still left to consider whether Plaintiff has actually stated a claim for false light invasion of privacy. To do so, he must "demonstrate[] publicity which places him in a false light before the public." *Bell v. Nat'l Republican Cong. Comm.*, 187 F. Supp. 2d 605, 617 (S.D.W. Va. 2002). "To be actionable, the false light must also be 'offensive to a reasonable person,' and the subject of 'widespread publicity.'" *Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 873, 878 (S.D.W. Va. 2014) (quoting *Crump*, 320 S.E.2d at 87–88). Here, Plaintiff alleges that the officers left him handcuffed for two hours in public view as they searched his car. The evidence could demonstrate that many members of the community observed his detention, giving rise to the inference that he was engaged in criminal activity when he was not. The court has little difficulty concluding that such an inference would be offensive to a reasonable person, though the question of widespread publicity is much narrower. In any event, the purpose of a motion to dismiss is not to weigh the merits of a plaintiff's claims and the Court will not do so here without the benefit of any evidence. Plaintiff has stated a claim for false light invasion of privacy, and dismissal would be premature.

### 5. Negligent Infliction of Emotional Distress

Plaintiff also raises a claim for negligent infliction of emotional distress ("NIED"). *Am. Compl.*, at ¶¶ 111–118. His claim fails for the simple reason that "[i]t is well-established under West Virginia law that, absent a physical injury to the plaintiff, negligent infliction of emotional distress claims may only be maintained in three very limited circumstances"—namely, "when the plaintiff witnesses a person closely related to him suffer critical injury or death as a result of the defendant's negligent conduct," "when the defendant negligently exposed the plaintiff to disease, causing emotional distress based on 'fear of contracting a disease,'" or "for negligence in mishandling a corpse." *Frederick v. W. Va. Dep't of Health & Human Servs.*, No. 2:18-cv-01077,

2019 WL 1198027, at *16 (S.D.W. Va. Feb. 15, 2019) (citing *Heldreth v. Marrs*, 425 S.E.2d 157 (W. Va. 1992); *Marlin v. Bill Rich Constr., Inc.*, 482 S.E.2d 620 (W. Va. 1996); *Ricottilli v. Summersville Mem'l Hosp.*, 425 S.E.2d 629 (W. Va. 1992)). Plaintiff does not allege physical injury, and this case does not involve death, disease, or corpses. It follows that Plaintiff has failed to state a claim for NIED.

### 6. Harassment

The final claim the officers challenge is Plaintiff's claim for harassment in violation of West Virginia Code § 61-2-9a, or West Virginia's criminal harassment statute. *Am. Compl.*, at ¶¶ 119–125. Defendants argue that Plaintiff cannot state a claim because West Virginia has not addressed whether a private cause of action exists under Section 61-2-9a, while Plaintiff argues that the Court should read a private cause of action into the statute. Yet this dispute is largely academic, because none of the municipal defendants face liability under Section 61-2-9a in light of the Tort Claims Act. As Wellman and Triplett are the only remaining defendants named in Count Nine, Plaintiff's claims fail as a matter of law.

In pertinent part, Section 61-2-9a(a) provides that "[a]ny person who repeatedly follows another knowing or having reason to know that the conduct causes the person followed to reasonably fear for his or her safety or suffer significant emotional distress, is guilty of a misdemeanor." Section 61-2-9a(b) similarly provides that "[a]ny person who repeatedly harasses or repeatedly makes credible threats against another is guilty of a misdemeanor." The key word in both provisions is "repeatedly." Defined as "on two or more occasions," use of the term demonstrates an unambiguous requirement that a defendant follow or harass a person more than once.[8] W. Va. Code § 61-2-9(a)(e)(5). Plaintiff has not alleged that either Wellman or Triplett ever

---

[8] Section 61-2-9a was recently amended to, *inter alia*, modify and clarify elements of the

had contact with him outside their encounter on April 8, 2019, or that they directed a pattern of harassment against him by third persons. As neither Wellman or Triplett could be found guilty of actually harassing Plaintiff, he has not stated a claim for relief under Section 61-2-9a.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** the Amended Partial Motion to Dismiss filed by Defendants Wayne County, Wade Wellman, and Nathan Triplett, ECF No. 40, with respect to Counts Four, Eight, and Nine as raised against Wellman and Triplett and Counts Four through Ten as raised against Wayne County, but **DENIES IN PART** the Motion with respect to Count Two. The Court further **GRANTS IN PART** the Motion to Dismiss filed by Defendant City of Kenova, ECF No. 45, with respect to Counts Four through Ten, but **DENIES IN PART** the Motion with respect to Count Two.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

        ENTER:    May 19, 2020

        _____
        ROBERT C. CHAMBERS
        UNITED STATES DISTRICT JUDGE

---

offense of harassment. *See* 2020 W. Va. Laws S.B. 201. The law—set to come into effect on June 1, 2020—modifies the definition of harassment, but still requires a "pattern of conduct composed of two or more acts" to actually constitute a crime.